# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| COLONY INSURANCE COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Cause No. 4:13CV2193(JCH) |
| ) | |
| FRISON FLEA MARKET INC., ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff Colony Insurance Company's ("Colony") Motion for Summary Judgment ("Motion"), (ECF No. 25); Motion for Default Judgment against Defendants Jack Frison ("Frison") and Frison Flea Market ("Flea Market"), *id.*; and Request for Judicial Notice in Support of its Motion for Summary Judgment. (ECF No. 26). The motions are ready for disposition.

## REQUEST FOR JUDICIAL NOTICE

The Court first addresses the Request for Judicial Notice because several of the materials listed in the Request are pertinent to the disposition of the Motion for Summary Judgment. Colony requests the Court to take judicial notice of the following materials, copies of all of which were filed as attachments to its Motion for Summary Judgment: (1) Defendant Coach's complaint in the Underlying Action;[1] (2) Coach's statement of uncontroverted material facts related to its summary judgment motion the Underlying Action; (3) the memorandum order granting Coach summary judgment in the Underlying Action; (4) Coach's motion for summary judgment and memorandum in support from the Underlying Action; (5) a criminal indictment

---

[1] This is a duty to indemnify action. The "Underlying Action" referenced is the action in which liability was determined.

against Defendant Jack Frison; and (6) an order from the court in the Underlying Action making clear that the damages issue had not been settled in Coach's motion for summary judgment. (ECF No. 26).

Under Fed. R. Ev. 201, a court may take judicial notice of an adjudicative fact as long as such a fact "is not subject to reasonable dispute . . . ." Fed. R. Ev. 201(b). A court is obligated to "take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Ev. 201(c)(2). Judicial notice may be taken at any stage of litigation. Fed. R. Ev. 201(d). Here, the facts are not subject to reasonable dispute, nor does either Defendant contest Colony's Request. Because Colony has provided the necessary information, the Court takes judicial notice of the materials supplied.

## **BACKGROUND**

Colony initiated this action on October 31, 2013 against Defendants Coach, Frison, and the Flea Market. (Complaint, ECF No. 1). Prior to Colony's filing of the Complaint, Frison and the Flea Market were found in an Underlying Action to be liable to Coach for trademark and copyright infringement. (Colony's Statement of Uncontroverted Facts, ("Colony SUF"), ECF No. 28, ¶¶ 24, 25). Colony, the insurer of the Flea Market, now seeks a declaration that it does not owe a duty to indemnify the Flea Market for the liability to Coach that has arisen out of Flea Market's actions.

In its complaint in the Underlying Action, Coach alleged that "'Defendants [including Frison and the Flea Market] have been engaging in . . . illegal counterfeiting and infringing activities knowingly and intentionally, with reckless disregard or willful blindness to Coach's rights, or with bad faith, for the purpose of trading on the goodwill and reputation of the Coach marks and Coach products.'" (Colony SUF ¶ 2 (quoting Coach Underlying Complaint ¶ 30)).

The Complaint contained several counts, among which were claims of trademark infringement, trademark counterfeiting, and copyright infringement. *Id.* ¶ 3. Colony, under a reservation of rights, defended Frison and the Flea Market in the Underlying Action, the liability portion of which has been determined by summary judgment in favor of Coach. *Id.* ¶¶ 4, 23.

Colony sets out in its Statement of Facts filed in support of this Motion several of the facts that Coach sought to establish on summary judgment in the Underlying Action. The Flea Market was a place where "counterfeit goods were sold every day by many vendors and were displayed in plain view." (Colony SUF ¶ 14 (citing Coach Underlying Statement of Facts, ECF No. 28-3, ¶ 22). "Frison had complete control over the Flea Market and provided the venue for the illegal conduct." *Id.* ¶ 12. In addition to making determinations about "who was allowed to sell goods and reserv[ing] the right to refuse rental of space[,]" *id.* ¶ 9, Frison and his employees patrolled the Flea Market daily. *Id.* ¶ 19. At no point during these patrols, however, did Frison or an employee tell "any vendor not to sell counterfeit goods, even after viewing the counterfeit goods out on display for sale." *Id.* The sale of counterfeit goods continued at the Flea Market after Coach sent a letter to Frison and the Flea Market "advising them of the counterfeit activities." *Id.* ¶ 16. And the sales did not stop even after Coach filed the Underlying Action. *Id.* ¶ 19.

Based on Coach's statement of facts, the court in the underlying action made the following findings:

> Coach has presented undisputed evidence from its investigators which establishes that counterfeit Coach merchandise was being sold openly at the Frison Flea Market by venders [*sic*], including Samb, in the second half of 2010 and in the Spring of 2011. The undisputed evidence also shows that after this lawsuit was brought, on one occasion only, Frison told the vendors to remove the Coach merchandise. However, sales of the counterfeit Coach merchandise continued and were had for the asking, the difference is that by July 2011, the items were no longer openly displayed.

> . . .
>
> Frison asserts that Couch [*sic*] is not entitled to summary judgment against him and the Flea Market because he did not facilitate the sale of counterfeit Coach goods by his vendors. The undisputed evidence is that Frison controlled the operations of the Flea Market and had the power to evict vendors who sold counterfeit goods at the market. The sale of counterfeit Coach goods was open and notorious. Despite being informed by Coach of this illegal activity in June 2010, the illegal sale of counterfeit Coach merchandise continued openly, then slightly less openly, at the Flea Market. Frison took no action to stop the sale of counterfeit Coach products until after this lawsuit was filed. After that date, instead of evicting vendors caught selling counterfeit Coach merchandise, Frison charged them a fine which he kept. It is undisputed that Frison reaped financial benefits by collecting fees, and later fines, from vendors who openly sold counterfeit goods.
>
> . . .
>
> Based on the undisputed evidence in the record I find that Coach has established its claim against Frison and the Flea Market for contributory trademark infringement. Frison willfully turned a blind eye to the sale of counterfeit Coach goods in his market and profited from those sales.
>
> . . .
>
> It is undisputed that the vendors selling counterfeit Coach merchandise violated Coach's copyrights on its merchandise. Frison was aware of this activity and materially contributed to it by providing the vendors with space, utilities, parking, advertising, plumbing, and customers." He also had a direct financial interest in his vendors' infringing activities by charging them fees, collecting fines, and charging admission to customers who came to the Flea Market to buy the counterfeit, copyright protected, Coach merchandise. As a result, I find that Coach is entitled to summary judgement on its copyright infringement claim against Frison and the Flea Market.

(Underlying MSJ order, ECF No. 28-4, at 6-8).

Coach has also provided additional facts as part of its Response to Colony's Motion. Coach asserts that "Frison Flea Market maintains a Facebook page online that depicts photos of the Market. It appears only the administrators of this webpage are authorized to post pictures or

information on the webpage." (Coach's Statement of Additional Material Facts, "Coach SOF," ECF No. 38, at 15 ¶ 3 (internal citation omitted)). At least one of these photos allegedly contains an unauthorized depiction of Coach products. (Facebook Photos, ECF No. 38-3, at 11-12). Coach also asserts that Frison invoked his Fifth Amendment rights when asked whether he "advertised the sale of counterfeit Coach products at the Frison Flea Market[.]" (Coach SOF at 16 ¶ 8).

Colony filed its Motion for Summary Judgment and a memorandum in support on April 18, 2014. (MSJ, ECF No. 25; Support Memo, ECF No. 27). Coach then filed its response, and Colony replied to that response. (Coach Response, ECF No. 39; Colony Reply, ECF No. 40). Prior to the filing of the summary judgment motion, the Clerk entered a default against Frison and the Flea Market for failing timely to answer or otherwise respond to the Complaint. (ECF No. 22). Colony's Motion operates both as a motion for summary judgment against Coach and as a motion for default judgment against Frison and the Flea Market.

## **SUMMARY JUDGMENT STANDARD**

Under the Federal Rules of Civil Procedure, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law determines "which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment." *Id.*

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all "justifiable inferences" are to be drawn in its favor. *Id.* at 255. Ultimately, the Court's function is not "to weigh the evidence . . . but to determine whether there is a genuine issue for trial." *Id.* at 249. A genuine issue for trial exists if

"the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248.

The moving party bears the burden of informing the court of the basis of its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of *some* alleged factual dispute." *Anderson*, 477 U.S. at 247 (emphasis in original). The nonmoving party must do more than "rest upon mere allegations or denials of its pleadings." *Id.* at 248 (internal quotation marks omitted).

## **DISCUSSION**

In this diversity suit, Missouri law governs all substantive matters. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Allstate Ins. Co. v. Blount*, 491 F.3d 903, 908 (8th Cir. 2007). In Missouri, the language in an insurance policy must be accorded "its plain meaning. If the language is unambiguous the policy must be enforced according to such language." *Robin v. Blue Cross Hosp. Serv., Inc.*, 637 S.W.2d 695, 698 (Mo. 1982) (*en banc*) (internal citations omitted). "If the policy language is ambiguous[,] it will be construed against the insurer. Language is ambiguous if it is reasonably open to different constructions . . . ." *Id.* (internal citations omitted).

This is a duty to indemnify action. The duty to indemnify is narrower than the duty to defend. *See McCormack Baron Mgmt. Servs., Inc. v. American Guar. & Liab. Ins. Co.*, 989 S.W.2d 168, 170 (Mo. 1999) (*en banc*). This is because "[t]he duty to indemnify turns on whether the claim is *actually* covered by the Policy[,]" rather than "whether the claim is *potentially* covered . . . ." *Am. Econ. Ins. Co. v. Jackson*, 476 F.3d 620, 624 (8th Cir. 2007) (emphasis in original) (applying Missouri law). In order to determine whether an insurer is

obligated to indemnify its insured, courts must look to the "facts as they are established at trial or as they are finally determined by some other means, for example through summary judgment or settlement." *McCormack Baron*, 989 S.W.2d at 173. To determine whether Colony must indemnify the Flea Market, therefore, the Court must apply the language of the applicable policy (the "Policy") to the facts established on summary judgment in the Underlying Action.

The Policy was issued only to the Flea Market and not to Frison individually. Colony contends that the Flea Market is not covered under the Policy both because its actions do not fall under the type of coverage the Policy provides and because, even if they do, three exclusions in the Policy would preclude coverage. Colony cites two portions of the Policy that could potentially provide coverage, which are labelled "Coverage A" and "Coverage B." (Support Memo, ECF No. 27, at 9, 12). "Coverage A is the occurrence-based part which provides coverage for sums that the insured becomes legally obligated to pay as damages because of 'property damage' caused by an 'occurrence.'" *Id.* at 9 (internal quotation marks omitted). According to Colony, Coverage A does not apply because the activities at issue were neither an "occurrence," nor did they cause "property damage." *Id.* at 9-12. Coach does not address this contention, and the Court takes Coach's failure to mention Coverage A as an admission that it does not provide coverage.

Colony also suggests that Coverage B does not apply. Under Coverage B, Colony agreed to indemnify the Flea Market for "those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies." (Policy, ECF No. 28-8, Ex. H, at 30). As relevant here, the Policy defines "personal and advertising injury" as injury "arising out of one or more of the following offenses: . . . g. Infringing upon another's copyright, trade dress or slogan in your 'advertisement.'" *Id.* at 39. An

"advertisement" under the Policy is "a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters." *Id.* at 37.

In its Response, Coach contends Colony has a duty to indemnify the Flea Market for two reasons: (1) that at least one Flea Market advertisement displayed a Coach product, and this in itself gives rise under the Policy to a duty to indemnify; and (2) that the Flea Market's advertising activity caused the damages for which the Flea Market became liable in the Underlying Action by attracting people to the Flea Market where they ultimately purchased infringing products. (Coach Response at 5-6, 8-9).

Coach's first contention is unavailing because it suggests that Colony should be forced to indemnify the Flea Market for injuries that were not the basis of the court's finding of liability in the Underlying Action. Inherent in Coach's contention is a request that the Court adopt a theory of liability that was not adopted by the court in the underlying summary judgment. Missouri courts have made clear, as noted above, that the duty to indemnify is determined by the facts as they are established in the underlying action. *McCormack Baron*, 989 S.W.2d at 173. While the judgment in a liability action does not prevent litigation in a subsequent indemnification action of matters related to coverage or matters that were collateral to the underlying judgment, "the judgment will be conclusive . . . as far as concerns the facts of the rendition of the judgment, its amount, and the cause of action on which it was rendered[.]" *Drennen v. Wren*, 416 S.W.2d 229, 235 (Mo. Ct. App. 1967). "The liability of the [insured] for damages has been fixed and becomes final by the judgment in the original suit[.]" *Id.* Thus, Colony cannot be obligated to indemnify the Flea Market for injuries that did not serve as the basis for liability in the Underlying Action.

The Flea Market was not found liable in the Underlying Action for any copyright infringement committed in an advertisement. The court in the Underlying Action found that the Flea Market was liable for copyright infringement because it materially contributed to the sale of counterfeit products at the Flea Market. (Underlying MSJ Order at 6-7). In other words, the infringing actions that gave rise to the Flea Market's obligation to pay were sales and the role the Flea Market played in facilitating those sales. Although the court in the Underlying Action mentioned advertising as one of the Flea Market's facilitating actions, *id.* at 8, nothing in its summary judgment order gives any indication that the Flea Market will be obligated to pay Coach for infringements committed within the Flea Market's advertisements. The Court cannot in this indemnification action create a new theory of liability when Coach had a full and fair opportunity in the Underlying Action to litigate the liability issue. Coach's first contention therefore must fail.

Coach next contends in its Response that, "[a]s a direct result of customers being notified [by the Flea Market's advertisements] of the availability of counterfeit Coach products at the Market, Coach suffered copyright and trademark infringement damages under the Lanham Act. Thus, there is a direct causal link between [the Flea Market's] advertisements and the damages suffered by Coach[.]" (Coach Response at 9). In other words, the advertisements, at least one of which allegedly displayed a Coach product, drew customers to the Flea Market where they were sold counterfeit goods, which was the infringing act that served as the basis for liability in the Underlying Action. Coach contends that this is a sufficient causal link to establish a duty to indemnify under the Policy.

When an advertising injury provision serves as a purported basis for insurance coverage, Missouri courts require a causal connection between the advertising activity at issue and the

injury that gives rise to liability. In *Am. States Ins. Co. v. Vortherms*, 5 S.W.3d 538 (Mo. Ct. App. 1999), the Missouri Court of Appeals affirmed a trial court's determination that an insurer had no duty to defend under an advertising injury provision. *See id.* at 540-41. The *Vortherms* court set out a three part test to determine whether an advertising injury provision provides coverage: "(1) an advertising injury as defined in the policy; (2) a course of advertising; and, (3) proof of a causal relationship between the first and second elements." *Id.* at 543. While the facts of *Vortherms* are too dissimilar to draw an analogy, this three-part test is the starting point for understanding how Missouri approaches an advertising injury provision.

The *Vortherms* element at issue here is the third—causation. Missouri courts have not examined the contours of the causation element in the context of an advertising injury provision, but the approach they would take can be understood through an examination of other courts' decisions. In *GRE Ins. Grp./Tower Ins. Co. v. Complete Music, Inc.*, 271 F.3d 711 (8th Cir. 2001), the Eighth Circuit applied Nebraska law and found the insurance company had no duty to indemnify under an advertising injury provision. *Id.* at 712. The insured in *GRE* was "a franchisor of mobile disc jockey services. [The insured] solicited franchisees by advertising services it supplied. One of these services was the distribution of compilation music discs produced by Halland Broadcasting Company, ("Halland"), which [the insured] later learned was not properly licensed to manufacture the discs." *Id.* Upon entering into an agreement with the insured, franchisees became contractually obligated to use the infringing compilation discs. *Id.* at 713. The insured contended on appeal that it was covered under the advertising injury provision "because its advertising induced potential investors to become franchisees, and the franchisees were then contractually bound to use the infringing compilation discs." *Id.*

The Eighth Circuit noted that the central issue on appeal was causation, *i.e.*, whether the advertising activity caused the alleged injury at issue. *Id.* It relied on *Simply Fresh Fruit, Inc. v. Cont'l Ins. Co.*, 94 F.3d 1219, 1222-23 (9th Cir. 1996), in setting forth a two-part inquiry for causation: "(1) whether the injury could have occurred 'independent and irrespective' of the insured's advertising, or (2) whether the advertising caused the infringement or merely exposed the infringing practices." *Id.* at 714. The court found that the insured had failed to establish a sufficient causal connection in part because "[i]t was the playing of the copyrighted songs that infringed, and this could have occurred independent of [the insured's] advertising." *Id.* at 714-15. The Missouri Court of Appeals has since cited *GRE* favorably, for general support regarding the elements required to establish a duty to indemnify under an advertising injury provision. *King v. Cont'l W. Ins. Co.*, 123 S.W.3d 259, 264 (Mo. Ct. App. 2003). It has also cited *Simply Fresh*, the case from which the Eighth Circuit derived its two-part inquiry, for support when it first adopted causation as a requirement for coverage under an advertising injury provision. *Vortherms*, 5 S.W.3d at 543. These citations, therefore, support a conclusion that Missouri courts would accept the two-part inquiry set forth by the Eighth Circuit as a refinement of the causation element of the test adopted in *Vortherms*.

The court in the Underlying Action found that Coach suffered trademark and copyright infringement based on the sale of counterfeit Coach products by vendors at the Flea Market. Coach contends that advertising by the Flea Market caused the infringing sales that gave rise to the Flea Market's liability. Sales and advertising are, however, separate activities. *See GRE*, 271 F.3d at 714-15 ("It was the playing of the copyrighted songs that infringed, and this could have occurred independent of Complete Music's advertising."). The vendors' infringing sales could have occurred independent and irrespective of any advertising by the Flea Market. In other

11

words, no sufficient causal connection exists between the alleged advertising and the infringing sales for purposes of the "personal and advertising injury" provision. The Flea Market is therefore not covered under the Policy.

Because the Flea Market is not covered under the Policy, the Court declines to address the applicability of any of the Policy's exclusions.

## **DEFAULT JUDGMENT AGAINST FRISON AND THE FLEA MARKET**

Colony has included in its Motion for Summary Judgment a motion for entry of default judgment against Frison and the Flea Market. Since a default has already been entered by the Clerk, (ECF No. 22), the entry of a default judgment is within the discretion of the Court. Fed. R. Civ. P. 55(b)(2); *United States ex rel. Equip. Rental & Sales, Inc. v. Harre*, 983 F.2d 128, 130 (8th Cir. 1993). A default judgment against Frison and the Flea Market is appropriate because Frison and the Flea Market have failed timely to answer or otherwise respond to the Complaint.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Colony Insurance Company's Request for Judicial Notice, (ECF No. 26), is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff Colony Insurance Company's Motion for Summary Judgment, (ECF No. 25), is **GRANTED**, and judgment is entered in favor of Colony with respect to its claim that it has no duty to indemnify Frison Flea Market. A separate Judgment will accompany this Memorandum and Order.

**IT IS FINALLY ORDERED** that Colony's Motion for Default Judgment against Defendants Frison and Frison Flea Market is **GRANTED**. A separate judgment will accompany this Memorandum and Order.

Dated this  18th  day of September, 2014.

>  /s/ Jean C. Hamilton
>  UNITED STATES DISTRICT JUDGE